UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMAL SAEED,

    *Plaintiff*,

*v*.                                      CASE NO. 09-CV-13270

COMMISSIONER OF               DISTRICT JUDGE MARIANNE O. BATTANI
SOCIAL SECURITY,                MAGISTRATE JUDGE CHARLES E. BINDER

    *Defendant*.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

### I.    RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

### II.    REPORT

---

[1]The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the recently amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

A.	**Introduction and Procedural History**

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of disability, disability insurance benefits (DIB), and supplemental security income (SSI) benefits. This matter is currently before the Court on cross-motions for summary judgment. (Docs. 10,13.)

Plaintiff was 32 years of age at the time of the most recent administrative hearing. (Transcript, Doc. 6 at 17, 42.) Plaintiff's relevant employment history includes work as a Hi-Lo driver for three years, truck driver for three years, and machine operator for five years. (Tr. at 66.) Plaintiff last worked in 2005. (*Id.*)

Plaintiff filed the instant claims on January 25, 2006 (DIB and SSI), alleging that he became unable to work on May 25, 2005 (DIB) and May 15, 2005 (SSI). (Tr. at 42, 211.) The claims were denied at the initial administrative stages. (Tr. at 26, 215.) In denying Plaintiff's claims, the Defendant Commissioner considered discogenic and degenerative disorders of back as possible bases of disability. (*Id.*) On November 12, 2008, Plaintiff appeared before Administrative Law Judge (ALJ) Ethel Revels, who considered the application for benefits *de novo*. (Tr. at 14-25.) In a decision dated December 23, 2008, the ALJ found that Plaintiff was not disabled. (Tr. at 25.) Plaintiff requested a review of this decision on January 19, 2009. (Tr. at 12.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on August 6, 2009, when, after the review of additional exhibits[2] (Tr. at 395-99), the Appeals Council denied Plaintiff's request for review. (Tr.

---

[2]In this circuit, when the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cline v. Comm'r*

at 6-8.) On August 20, 2009, Plaintiff filed the instant suit *pro se* seeking judicial review of the Commissioner's unfavorable decision.

**B.     Standard of Review**

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination which can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during the administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course

---

*of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting S.S.R. 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, the court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of the court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference

from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. App'x 521, 526 (6th Cir. 2006).

**C.     Governing Law**

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II, 42 U.S.C. §§ 401 *et seq.*, and the Supplemental Security Income Program (SSI) of Title XVI, 42 U.S.C. §§ 1381 *et seq*. Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. BLOCH, FEDERAL DISABILITY LAW AND PRACTICE § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only

for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his] impairments and the fact that [he] is precluded from performing [his] past relevant work." *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If

6

the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D. ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff met the insured status requirements through December 31, 2010, and had not engaged in substantial gainful activity since the alleged onset date of May 25, 2005. (Tr. at 19.) At step two, the ALJ found that Plaintiff's back disorder and depression were "severe" within the meaning of the second sequential step. (*Id.*) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 20.) At step four, the ALJ found that Plaintiff did not have the residual functional capacity to perform his past relevant work as a truck driver or operator. (Tr. at 23.) At Step Five, the ALJ determined that Plaintiff retained the residual functional capacity to perform a limited range of sedentary work. (Tr. at 20-23.) Therefore, the ALJ found that Plaintiff was not disabled. (Tr. at 25.)

### E. Administrative Record

A review of the relevant medical evidence contained in the administrative record indicates that Plaintiff was involved in an accident on May 25, 2005, when Plaintiff, while driving a Hi-Lo, was struck from behind by another Hi-Lo. (Tr. at 145.) Plaintiff's body was "thrown side to side"

and his "left hip struck the side rail of the chair of the hi-lo"; he "was very jarred" and "was treated at the Medical the next day [] with his family physician." (Tr. at 367.)

Plaintiff participated in physical therapy for his "lumbrosacral strain." (Tr. at 145, 147-63.) In June 2005, Plaintiff was educated in proper application of heat and/or ice and in specific home exercises and physical therapy was discontinued because "progress plateaued." The physical therapist noted that Plaintiff "displays over reactive pain and guarding with transitional movements." (Tr. at 149.)

An MRI of the lumbar spine taken in June 2005 showed "[c]entral herniation with some pressure on the nerve roots at L5-S1 and some disc space degeneration. L4-5 shows a right paracentral herniation with pressure on the right side of the subarachnoid space and nerve roots." (Tr. at 137.) However, nerve conduction studies performed in June 2005 were all normal. (Tr. at 174.)

In July 2005, Plaintiff was examined by Annette G. DeSantis, M.D., who concluded that Plaintiff "is neurologically intact," that his "symptoms and examinations are most consistent with lumbar strain," that he "is not a surgical candidate," but rather "should respond favorably to a short course of formal physical therapy of about 2-3 weeks." (Tr. at 179-80.) Dr. DeSantis also opined that "much of his discomfort is on the basis of soft tissue strain and not on the basis of what is happening at the spinal level." (Tr. at 180.)

In September 2005, Plaintiff was evaluated by S.S. Ahmad, M.D., a specialist in neurology and pain management, who determined that an "EMG today showed bilateral L4-L5 lumbar radiculopathies and/or spondylosis." (Tr. at 172.) Dr. Ahmad recommended that Plaintiff "[c]ontinue physical therapy, exercises." (*Id.*)

In November 2005, Norman Rotter, M.D., of Neurosurgery Associates Oakwood, found that Plaintiff "does have a disk problem, but that he [could] probably get by without surgery and that he should try conservative treatment and perhaps he may benefit from an antidepressant." (Tr. at 164.)

In December 2005, diagnostic testing showed a normal chest, normal sacrum, normal bilateral hips, and Grade I spondylolisthesis of L5 over S1 with possible spondylolysis of L5. (Tr. at 336.) At that time, Dr. Ahmad's prognosis was that Plaintiff's condition was "[p]robably remediable with treatments," including muscle relaxants and physical therapy. (Tr. at 383.)

Plaintiff participated in two four-week sessions of physical therapy from December 2005 through January 2006, and from February 2006 through March 2006. (Tr. at 181-97, 319-29.) During that period of time, Laran Lerner, D.O., wrote a "work disability note," indicating that Plaintiff was totally disabled until January 16, 2006, and that he was also disabled until March 13, 2006. (Tr. at 193, 317.)

An MRI of the lumbar spine taken on April 17, 2006, showed "normal appearing lumbar lordosis," that the "conus medullaris is normal" and that the "visualized portion of the sacrum is grossly intact." The MRI also revealed:

> 1. Grade 1 anterior spondylolisthesis of L5 on S1. Broad based disc herniation versus pseudo disc eccentric to the right with degree of left foraminal encroachment and mild acquired central canal stenosis at L5-S1 (stable).
>
> 2. Broad based disc herniation to the right paracentral/right foraminal distribution with degree of facet joint changes and degree of biforaminal encroachment and mild acquired central canal stenosis at L4-5.
>
> 3. Small Schmorl's node involving the inferior endplate of L3 with mild diffuse bulging at L3-4.

(Tr. at 136, 331.)

Dr. Lerner testified in a deposition conducted on October 1, 2007, that he would advise restricting Plaintiff to "avoid heavy lifting greater than five pounds, avoid excessive bending, twisting or turning, avoid prolonged sitting, standing, and walking" and that Plaintiff "would have to lie down intermittently during the day, depending on his condition and the severity of the pain." (Tr. at 257-58.)

In September 2008, an MRI of the lumbar spine revealed "[r]ight paracentral disc protrusion at L4/L5 with mass effect on the right exiting nerve root," "[p]seudo-disc bulge at L5/S1 with a Grade I anterolisthesis," and "[n]o evidence of spinal stenosis at that level." (Tr. at 371.)

A Physical Residual Functional Capacity (RFC) Assessment conducted in March 2006 concluded that Plaintiff is able to occasionally lift 20 pounds, frequently lift 10 pounds, stand or walk for about 6 hours in an 8-hour workday, sit for about 6 hours in an 8-hour workday, and has the unlimited ability to push or pull. (Tr. at 200.) Plaintiff was also found to be frequently limited in his ability to climb, balance, kneel, and crawl and is occasionally limited in his ability to stoop and crouch. (Tr. at 201.) There were no manipulative, visual, communicative, or environmental limitations established. (Tr. at 202-03.) The Assessment found Plaintiff to be "partially credible." (Tr. at 204.)

At the administrative hearing, the ALJ asked the Vocational Expert (VE) to consider a person with Plaintiff's background and to further assume that:

> [the person] does need a sit/stand option, one that will allow for sitting no more than 30 minutes at a time, standing no more than 30 minutes at a time, walking one block at a time, and lifting up to five pounds. . . . [N]eeds work that is simple, repetitive type tasks because there are moderate limitations in the ability to maintain concentration for extended periods because of pain, as well as moderate limitations in the ability to carry out detailed instructions because of depression. There are additional limitations of the work must not require frequent bending, twisting, and turning, nor frequent climbing of stairs or ramps. No kneeling, crouching, crawling, or stooping, nor operating at hazardous heights. No operating in temperature

10

extremes or wet, humid areas. No use of leg controls and the use of a cane for ambulating.

(Tr. at 424.) The VE indicated that such a person would be able to perform stationary bench assembly jobs, inspector, and checker sorter jobs of which there are 1,000 each in Southeastern Michigan. (Tr. at 425.) The VE further testified that her testimony was consistent with the Dictionary of Occupational Titles. (Tr. at 426.)

### F.  Analysis and Conclusions

#### 1.  Legal Standards

The ALJ determined that Plaintiff possessed the residual functional capacity to perform sedentary work. (Tr. at 20-23.) Sedentary work involves lifting no more than ten pounds at a time and occasionally lifting and carrying articles like docket files, ledgers and small tools. Although a sedentary job is defined as one that involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a)(1991). Social Security Ruling 83-10 clarifies this definition:

> "Occasionally" means occurring from very little up to one-third of the time. Since being on one's feet is required "occasionally" at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday. Work processes in specific jobs will dictate how often and how long a person will need to be on his or her feet to obtain or return small articles.

SSR 83-10.

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether or not substantial evidence supports the ALJ's decision.

#### 2.  Substantial Evidence

Plaintiff contends that substantial evidence fails to support the findings of the Commissioner. (Doc. 10.) As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

In addition to challenging whether the ALJ's decision is supported by substantial evidence, Plaintiff also contends that the ALJ did not properly evaluate Plaintiff's credibility, did not properly weigh the opinions and assessments of treating medical sources, and failed to evaluate Plaintiff's claim under Listing 1.04. (Doc. 10.)

### a. Plaintiff's Credibility

Social Security Regulations prescribe a two-step process for evaluating subjective complaints of pain. The plaintiff must establish an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain rising from the condition or (2) the objectively-determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain. 20 C.F.R. § 404.1529(b); *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991) (citing *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986)). If a plaintiff establishes such an impairment, the ALJ then evaluates the intensity and persistence of the plaintiff's symptoms. 20 C.F.R. § 404.1529(c); *Jones*, 945 F.2d at 1369-70. In evaluating the intensity and persistence of subjective symptoms, the ALJ considers objective medical evidence and other information, such as what may precipitate or aggravate the plaintiff's symptoms, what medications, treatments, or other methods

plaintiff uses to alleviate her symptoms, and how the symptoms may affect the plaintiff's pattern of daily living. *Id.*

The issue is whether the ALJ's credibility determinations are supported by substantial evidence. An ALJ's findings based on the credibility of an applicant are to be accorded great weight and deference, particularly since the ALJ is charged with the duty of observing a witness's demeanor and credibility. *Walters*, 127 F.3d at 531. When weighing credibility, an ALJ may give less weight to the testimony of interested witnesses. *Cummins v. Schweiker*, 670 F.2d 81, 84 (7th Cir. 1982) ("a trier of fact is not required to ignore incentives in resolving issues of credibility"); *Krupa v. Comm'r of Soc. Sec.*, No. 98-3070, 1999 WL 98645 at *3 (6th Cir. Feb. 11, 1999) (unpublished).

After examining the record evidence, I suggest that substantial evidence supports the ALJ's findings, including the finding that Plaintiff's testimony regarding his level of pain was not fully credible. Plaintiff's physical therapist found that Plaintiff "displays over reactive pain and guarding with transitional movements." (Tr. at 149.) Dr. DeSantis concluded that Plaintiff "is neurologically intact," that his "symptoms and examinations are most consistent with lumbar strain," that he "is not a surgical candidate," but rather "should respond favorably to a short course of formal physical therapy of about 2-3 weeks." (Tr. at 179-80.) Dr. DeSantis also opined that "much of his discomfort is on the basis of soft tissue strain and not on the basis of what is happening at the spinal level." (Tr. at 180.) Dr. Rotter "encouraged that [Plaintiff] does have a disk problem, but that he [could] probably get by without surgery and that he should try conservative treatment and perhaps he may benefit from an antidepressant." (Tr. at 164.) Even Dr. Ahmad recommended Plaintiff "[c]ontinue physical therapy, exercises" and his prognosis was that Plaintiff's condition was "[p]robably remediable with treatments" including muscle relaxants and

13

physical therapy. (Tr. at 172, 383.) There is no objective medical evidence to support Plaintiff's complaints of disabling pain and there is objective medical evidence supporting the conclusion that Plaintiff's condition is not severe enough to produce disabling pain; thus, the ALJ's finding as to Plaintiff's credibility is supported by substantial evidence.

      **b.**      **Weight given to treating source opinions**

In weighing the opinions and medical evidence, the ALJ must consider relevant factors such as the length, nature and extent of the treating relationship, the frequency of examination, the medical specialty of the treating physician, the opinion's evidentiary support, and its consistency with the record as a whole. 20 C.F.R. § 404.1527(d)(2)-(6). Therefore, a medical opinion of an examining source is entitled to more weight than a non-examining source and a treating physician's opinion is entitled to more weight than a consultative physician who only examined the claimant one time. 20 C.F.R. § 404.1527(d)(1)-(2). *See also Rogers*, 486 F.3d at 242 (stating that the "treating physician rule," which provides that "greater deference is usually given to the opinions of treating physicians than to those of non-treating physicians," is a key governing standard in social security cases).

"Claimants are entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). Therefore, a decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight." S.S.R. 96-2p, 1996 WL 374188, at *5 (1996). *See also Rogers*, 486 F.3d at 242. "[A] failure to follow the procedural requirement of identifying the reasons for discounting the opinions

and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243.

The opinion of a treating physician should be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(d)(2). A physician qualifies as a treating source if the claimant sees the physician "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition." 20 C.F.R. § 404.1502. "The opinion of a non-examining physician, on the other hand, 'is entitled to little weight if it is contrary to the opinion of the claimant's treating physician.'" *Adams v. Massanari*, 55 Fed App'x 279, 284 (6th Cir. 2003) (quoting *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987)).

I note that the ALJ rejected Dr. Lerner's conclusion that Plaintiff needs to lie down intermittently during the day because there was "no evidence to support the conclusion" and no real indication from Plaintiff that he needs to do so. (Tr. at 23.) I suggest that the ALJ's decision to not give controlling weight to Dr. Lerner's opinion was proper because it was not well-supported and was inconsistent with other substantial evidence in the record. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(d)(2).

I further note that while, as mentioned, the ALJ discounted Dr. Lerner's opinion as to the need to lie down intermittently, the ALJ's hypothetical presented to the VE nevertheless incorporated the other restrictions suggested by Dr. Lerner, including a sit/stand/walk option, the

need to avoid lifting greater than five pounds, and to avoid excessive bending, twisting or turning. (Tr. at 257-58, 424.)

### c. Listing 1.04

Listing 1.04 applies to disorders of the spine and requires "[e]vidence of nerve root decompression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight leg-raising test (sitting and supine)" or "spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every two hours" or "lumbar spinal stenosis, resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b." 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 1.04A, B, and C. A plaintiff's impairment must match all the specified medical criteria in order to show the impairment meets a Listing. *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990); 20 C.F.R. § 404.1525(c); *Golay v. Comm'r of Social Security*, 348 F.3d 124, 125 (6th Cir. 2003). Plaintiff cannot rely on the "overall functional impact of his unlisted impairment or combination of impairments" to satisfy equivalence to a Listing. *Zebley*, 493 U.S. at 531. Where the record lacks medical evidence supporting limitation in the range of motion and loss of motor reflex, the Listing is not met. *Lawson v. Comm'r,* 192 Fed App'x 521, 529 (6th Cir. 2006).

In the instant case, Plaintiff contends that the requirements of the Listing are met because "medical documentation supports the fact that plaintiff has two herniated discs at L4-5 and L5-S1

that are impinging the nerves specifically at L4-5." (Doc. 10 at 28.) However, there is no evidence of " nerve root decompression," "spinal arachnoiditis,"or "lumbar spinal stenosis," or the other requisite confirming criteria. 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 1.04A, B, and C. To the contrary, medical evidence offered on these topics indicates that there is "[n]o evidence of spinal stenosis," that on set of nerve conduction studies were all normal, that Plaintiff "is neurologically intact," and that "much of his discomfort is on the basis of soft tissue strain and not on the basis of what is happening at the spinal level." (Tr. at 174, 179-80, 371.)

This lack of medical evidence regarding meeting the criteria required under Listing 1.04 is, I suggest, fatal to Plaintiff's contention that Listing 1.04 was met. *See West v. Astrue*, No. 3:08-CV-124, 2009 WL 2168683, at *5 (E.D. Tenn. July 17, 2009); *Campbell v. Comm'r of Social Security*, No. 07-13252, 2008 WL 2670218, at *4 (E.D. Mich. June 27, 2008). In addition, I note that there is no medical opinion evidence that Plaintiff meets Listing 1.04. I therefore suggest that Plaintiff's contention that the ALJ erred by finding that he did not meet any Listed Impairment, i.e., Listing 1.04, is without merit.

### d. Conclusion

For all these reasons, after review of the record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

### III. REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1).

Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

|  |  |
|---|---|
|  | s/ 𝕮𝖍𝖆𝖗𝖑𝖊𝖘 𝕰 𝕭𝖎𝖓𝖉𝖊𝖗 |
|  | CHARLES E. BINDER |
| Dated: May 24, 2010 | United States Magistrate Judge |

**CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System.

| Date: May 24, 2010 | By    s/Patricia T. Morris |
|---|---|
|  | Law Clerk to Magistrate Judge Binder |